UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | | |
|---|---|---|
| BRENDA S. HOWINGTON | ) | |
| | ) | |
| V. | ) | NO. 2:08-CV-189 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |

REPORT AND RECOMMENDATION

This action is one for judicial review of the Commissioner's final decision denying the plaintiff's application for supplemental security income under the Social Security Act. Both the plaintiff and the defendant have filed Motions for Summary Judgment [Docs. 8 and 12]. These have been referred to the United States Magistrate Judge under the standing orders of the Court and 28 U.S.C. § 636.

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human*

*Services*, 846 F.2d 345, 349 (6th Cir. 1988).

Plaintiff was 49 years of age before the denial of her application by an Administrative Law Judge. She had a 7th grade or "limited" education. She had no past relevant work experience. She alleged disability due to a heart condition, arthritis, a thyroid condition and asthma.

Plaintiff's counsel stated her medical history in her brief as follows, with additional comments from the Court shown in brackets:

> Plaintiff was admitted to Bristol Regional Medical Center from February 4, 1998 through February 9, 1998, after she presented to the Emergency Room with a two to three day history of intermittent chest pain. Shortly after her arrival in the Emergency Room, Plaintiff experienced ventricular fibrillation requiring cardioversion. EEG initially showed acute inferior wall myocardial infarction with marked reciprocal changes in the lateral leads, as well as changes across the precordium suggestive of possible posterior wall involvement. Prior to arrival in the cardiac catheterization lab, Plaintiff experienced two further episodes of ventricular dysrhythmias requiring cardioversion. In the lab, temporary transvenous pacemaker was placed, followed by left heart catheterization which showed inferior wall hypokinesia with an ejection fraction of approximately 50%. The circumflex branch had an 80% stenosis in the origin of a small obtuse marginal branch and the right coronary artery was initially noted to be totally occluded in the mid portion. The final diagnoses upon discharge were acute inferior wall myocardial infarction, hypothyroidism, history of hypercholesterolemia, and tobacco abuse (Tr. 190-206).
> 
> On March 6, 1998, cardiac spect perfusion scan yielded the conclusion of decreased perfusion involving the inferior wall with small foci of reversible ischemia on the rest of the study (Tr. 210-218).
> 
> Plaintiff was again admitted to Bristol Regional Medical Center from May 7, 1998 through May 8, 1998, due to presenting complaints of chest heaviness associated with shortness of breath, diaphoresis, and palpitations. Cardiac catheterization showed an ejection fraction of approximately 47%. The rest of the catheterization showed no critical coronary artery disease, and a spot on her circumflex that was 80% occluded, with LMA 60% occluded. Given Plaintiff's history and results of catheterization, it was determined that her chest pain was likely from GI etiology (Tr. 219-228).
> 
> Plaintiff received outpatient treatment and testing at Bristol Regional Medical Center on seven occasions from May 26, 1998 through November 11, 1998. Conditions and complaints addressed include gastroesophageal reflux disease [hereinafter "GERD"], abdominal pain, atypical chest pain and burning, coronary artery disease, sinusitis, neck pain, esophagitis, history of asthma, and history of hypothyroidism (Tr. 229-253). On May 29, 1998, cardiolite spect yielded the impression of large fixed defect involving the

inferior and inferolateral left ventricular myocardium. Chest x-rays on the same day showed mild chronic interstitial markings in the bases (Tr. 241-242).

Plaintiff received additional outpatient treatment and testing at Bristol Regional Medical Center during 1999. On February 10, 1999, one day Holter monitor showed one isolated ventricular premature contraction and one isolated atrial premature contraction (Tr. 278-287). On February 26, 1999, cardiac spect scan demonstrated some photopenia of the inferiorlateral and inferior myocardium, felt to have some artifactual component, but suspicious for myocardial scarring. Treadmill stress test was negative for ischemia (Tr. 268-277). On April 18, 1999, treatment was rendered for complaints of chest pain, felt to be of GI etiology (Tr. 265-267). On November 19, 1999, treadmill stress test yielded the impression of good functional capacity, symptom negative for ischemia, and equivocal ECG response. Cardiolite spect scan again noted a fixed photopenic defect involving the inferolateral and inferior myocardial segments (Tr. 254-264).

Plaintiff received treatment at Bristol Regional Medical Center on November 29, 2000 and February 15, 2001, due to left wrist strain and atypical chest pain associated with nausea (Tr. 288-294).

Dr. Dean Beach treated Plaintiff from April 30, 2002 through August 1, 2002, due to left elbow tendinitis, left hand weakness, left shoulder pain, coronary artery disease, hyperlipideia, hypothyroidism, sinusitis, menopausal syndrome, vitiligo, and GERD (Tr. 295-305).

Plaintiff underwent consultative exam by Dr. Karl W. Konrad on September 19, 2002. Presenting complaints included history of myocardial infarction, daily chest pain, elevated cholesterol, back pain, shortness of breath, arthritis in both shoulders, left hand carpal tunnel problems, and hypothyroidism. Physical exam was remarkable for hepatomegaly and vitiligo pigment changes of the extremities. The diagnoses were hepatomegaly and history of coronary artery disease (patient's account) [Dr. Konrad found the plaintiff had "no impairment-related physical limitations."]  (Tr. 306-318).

On September 30, 2002, a reviewing state agency physician opined Plaintiff can lift/carry a maximum of 50 pounds occasionally, 25 pounds frequently; can stand/walk (with normal breaks) for a total of about six hours in an eight-hour workday; can sit (with normal breaks) for at total of about six hours in an eight-hour workday; and should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc., due to a history of asthma. Dr. Bounds opined Dr. Konrad's assessment did not consider the effects of Plaintiff's pain and fatigue (Tr. 319-324).

On October 13, 2003, Plaintiff underwent coronary arteriography with left ventricular function studies and percutaneous coronary intervention of the mid right coronary artery implantation of a stent, due to angina pectoris in a patient with known coronary disease and abnormal exercise evaluation. The impression was significant single vessel disease with moderate stenosis as well in a small circumflex, successful percutaneous coronary intervention of the mid right coronary artery with implantation of a stent, and extensive inferior wall motion abnormality with moderately impaired overall left ventricular systolic function (Tr. 325-332).

Plaintiff received treatment at Cardiovascular Associates from February 25, 1998 through November 19, 2003, during which time she was suffering history of myocardial infarction, left arm pain, recurrent chest pain and tightness, coronary artery disease, neck pain, stress, dizzy spells, weight gain, hypopigmentation, shortness of breath, and

3

moderate to severe defect in the inferior-posterior wall of the left ventricle (Tr. 333-358).

Plaintiff received treatment at Bluff City Medical Center from August 25, 1999 through May 26, 2004. Conditions and complaints addressed during this time include hyperlipidemia, hypothyroidism, left shoulder pain, neck pain, tingling in arms, hypertension, sinusitis, GERD, gastritis, chronic diarrhea, weight gain, left wrist pain and tingling, left carpal tunnel syndrome, rhinitis, arthralgias, allergies, vitiligo, fatigue, coronary artery disease, insomnia, dizziness, upper respiratory infections, probable arthritis, moderate to severe back pain and muscle spasms, leg pain, and left trapezius strain (Tr. 359-413).

Plaintiff underwent her second consultative exam by Dr. Konrad on July 1, 2004. Presenting complaints included history of myocardial infarction and coronary stent placement; chest pain; shortness of breath; arthritis in the left arm, shoulder, and upper back; left carpal tunnel syndrome; hypothyroidism; and asthma. Exam was remarkable for vitiligo of the head, neck, and arms and the diagnoses were coronary artery disease and hepatomegaly [Dr. Konrad again found "no impairment-related physical limitations."](Tr. 414-416).

On July 10, 2004, a reviewing state agency physician opined Plaintiff can lift/carry a maximum of 50 pounds occasionally, 25 pounds frequently; can stand/walk (with normal breaks) for a total of about six hours in an eight-hour workday; can sit (with normal breaks) for a total of about six hours in an eight-hour workday; and can frequently (less than two-thirds of the time) climb, balance, stoop, kneel, crouch, and/or crawl (Tr. 417-424).

Plaintiff received treatment at Rural Health Services Consortium from July 16, 2004 through October 1, 2004, due to degenerative disc disease of the lumbar spine, chronic nausea, GERD, sinusitis, hypothyroidism, coronary artery disease, weight gain, and abdominal distention (Tr. 427-432). On July 16, 2004, MRI of the lumbar spine revealed L5-S1 degenerative disc disease without evidence of disc bulging or disc herniation and L4-5 degenerative disc disease with disc bulging slightly impressing itself upon the ventral margin of the thecal sac (tr. 431-432).

Dr. Ralph L. Mills examined Plaintiff on August 3, 2004, upon referral by Dr. Aguas for evaluation of back pain. MRI of the lumbar spine was noted to show degenerative disc disease at L5-S1 and L4-L5. On exam, Plaintiff could extend and flex only to about 70% of expected at her lumbar spine; her lateral bending was also significantly diminished; knee and ankle jerks were 1+ bilaterally; and there was considerable tenderness in the lower lumbar paraspinals. The diagnoses were lumbar strain and mild degenerative disc disease by MRI, for which physical therapy was recommended (Tr. 433-434). Plaintiff returned to Dr. Mills on October 15, 2004, for back follow-up. MRI was noted to show degenerative changes, but nothing that looks surgical. Exam was remarkable for considerable tenderness in the lower lumbar paraspinals and tenderness to palpation in the SI joints. The diagnosis was osteoarthritis of the lumbar spine. Dr. Mills opined Plaintiff is an appropriate disability candidate and is unable to continue to work due to a combination of the lower back and cardiac issues (Tr. 425-426).

Plaintiff underwent physical therapy evaluation on August 19, 2004, upon referral by Dr. Mills with a diagnosis of low back pain. Plaintiff complained of constant

pain in the right low back and in her mid back area. Exam was remarkable for a decrease in lumbar and gluteal flexibility with pain and tenderness in the thoracic and lumbar paraspinals (Tr. 435-436).

Plaintiff returned to Cardiovascular Associates on November 4, 2004, at which time she complained of soreness in the upper chest. On exam, the chest wall was very tender to palpation and reproduced exactly the symptoms Plaintiff had been experiencing. Dr. Borsch felt Plaintiff was clinically stable (Tr. 437).

Plaintiff returned to Rural Health Services Consortium on September 22, 2005, with complaints of worsening leg cramps, lower back pain, each ache, restlessness, and hot flashes. The diagnoses were low back pain, menopause, GERD, restless leg, and TMJ (Tr. 438).

Doc. 9, pgs. 2-7.

In his hearing decision, the ALJ found that the plaintiff "can lift and carry no more than 20 pounds at a time and 10 pounds frequently. The claimant can sit, stand and walk for 6 hours in an 8-hour workday." (Tr. 21). Since the plaintiff could perform the full range of light work, he utilized the Medical-Vocational Guidelines (the "Grid") to determine if there was work in the national economy which plaintiff could perform.. Under Rule 202.17, a person who can perform the full range of light work, is a "younger individual" (less than 50 years of age), has a limited education but is "at least literate and able to communicate in English", and who has no previous work experience is "not disabled."[1] Accordingly, the ALJ found that the plaintiff was not disabled and not entitled to supplemental security benefits.

Plaintiff's has advanced as her sole argument that "the ALJ's own RFC (residual functional capacity) determination establishes that Plaintiff cannot perform work on a regular and continuing basis." Plaintiff bases this on his finding that she "can sit, stand and walk for 6 hours in an 8-hour workday." Plaintiff interprets the ALJ's language used in his finding

---

[1] Plaintiff was close to her 50th birthday. A person who is 50 to 55 is termed "closely approaching advanced age." Rule 202.10 would, for such a person, direct a finding of "not disabled" as well.

5

as indicating that she cannot work for more than six hours in an eight hour workday. According to the plaintiff, the ALJ found she could sit, stand and walk for a ***total*** of six hours. Since an ability to do "full-time work" on a "regular and continuing basis" means "8 hours a day, for 5 days a week, or an equivalent work schedule...," the plaintiff asserts she is disabled.

There are various reasons why this is a flawed interpretation of the ALJ's finding. 20 CFR § 416.967(b) defines "light work" as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, the claimant must have the ability to do substantially all of these activities." Thus, the regulation itself does not break down a precise number of hours that a person must stand or walk. However, *Social Security Ruling 83-10* provides insight. In part, that Ruling states that "'[f]requent' means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, ***for a total of approximately 6 hours of an 8-hour-workday***. Sitting may occur intermittently during the remaining time." *(emphasis added).*

It is obvious that the ALJ did not mean that the plaintiff could only stand, walk or sit in combination for a total of only six hours in an eight-hour workday. That would mean that the remaining two hours would have to be spent lying down (that being the only posture

6

remaining) for the other two hours of the eight hour total. The Court interprets his phrase to mean that the plaintiff can stand for six hours in an eight hour workday if necessary, can walk for six hours in an eight hour workday if necessary, and sit for six hours if necessary. The six hours of standing and walking, as made clear by the regulation, are necessary to perform the full range of light work.

Also, the ALJ unequivocally stated in his "findings" that the plaintiff "has the residual functional capacity to perform the full range of light work." (Tr. 23). This Court has read hundreds and hundreds of medical assessments in Social Security cases down through the years which state that the person at issue "can stand/and or walk for six hours in an eight hour workday" and "can sit for six hours in an eight hour workday." Respectfully, this argument, although presented in this case for the first time in the undersigned's experience, is totally unsupportable, and has not been made in other cases because of its transparent fallacy.

As previously stated, this is the only assignment of error. Any other allegation, such as an attack on the ALJ's finding of residual functional capacity, is waived. However, the reports of Dr. Konrad and the record as a whole provide substantial evidence to support the RFC findings.

It is respectfully recommended that the plaintiff's Motion for Summary Judgment [Doc. 8] be DENIED and the defendant Commissioner's Motion for Summary Judgment [Doc. 12] be GRANTED.[2]

---

[2] Any objections to this report and recommendation must be filed within ten (l0) days of its service or further appeal will be waived. Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947-950 (6th Cir. 198l); 28 U.S.C. § 636(b)(1)(B) and (C).

Respectfully submitted:


      s/ Dennis H. Inman
    United States Magistrate Judge